**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Gregg A. Johnson,<br><br>Defendant. | No. CR-19-00114-001-TUC-JAS (EJM)<br><br>**ORDER** |

Pending before the Court are Defendant's Motion for Review by District Court Judge of Detention Order (Doc. 21), Government's motions for detention (Docs. 12, 29, 41), and Defendant's motions for release (Docs. 13, 42). The Court held a *de novo* hearing on January 10, 2019, and took the matter under advisement. In addition to the hearing, the Court reviewed the parties' filings (Docs. 12, 13, 21, 23, 29, 30, 41, 42), the transcripts of the three-day detention hearing before Magistrate Judge D. Thomas Ferraro (Docs. 24, 25, 26), and the exhibits admitted before Magistrate Judge Ferraro.

This Court reviews a Magistrate Judge's detention order *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). We review the evidence before the magistrate with no deference and make independent findings. *Id.* at 1192–93. A defendant will be detained prior to trial if the Government proves either that the defendant is a flight risk by a preponderance of the evidence or that the defendant is a danger to the community by clear and convincing evidence after proving that the matter is eligible for a detention hearing under Section 3142(f) of Title 18 of the United States Code and that there are no conditions

that can reasonably assure defendant's appearance and safety to other person and the community. *See* 18 U.S.C. § 3142(f) and (g); *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) (per curiam); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Section 3142(f) of Title 18 of the United States Code, creates seven groups of cases that are eligible for detention hearings: (1) crimes of violence, violations of section 1591, or offenses listed in section 2332b(g)(5)(B) with a maximum sentence of ten (10) years or more, (2) offenses with a maximum sentence of life imprisonment or death, (3) violations of the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of Title 46 with a maximum sentence of ten (10) years or more, (4) felony allegations against a person already convicted of two or more offenses described in the three previous groups or the state or local equivalents if federal jurisdiction existed, (5) felony allegations involving a minor victim or involving possession or use of a firearm or destructive device or involving a failure to register under Section 2250 of Title 18 of the United States Code, (6) there is a serious risk the defendant will flee, and (7) there is a serious risk that defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective witness or juror.

When considering if any condition could reasonably assure a defendant's presence or safety of community the Court looks to the following factors: the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The Court may consider hearsay evidence at a detention hearing. Fed. R. Evid. 1101(d)(3); *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *United States v. Bibbs*, 488 F. Supp. 2d 925, 925–26 (N.D. Cal. 2007). The Court will evaluate the reliability of such hearsay evidence in light of the general principles that evidence that is directly from the source and is cross-examined is more reliable.

**FACTS**

Based on the briefs, transcripts, and testimony before the Court, the Court finds the facts to be as follows:

Defendant works for Homeland Security Investigations ("HSI")[1] and is alleged to have made false statements regarding his educational achievements on his applications to HSI.

*Investigation*

The investigation into Defendant's background and application stemmed from an incident at V.J.'s place of employment, the Veteran's Administration ("VA") in Tucson, Arizona. On November 8, 2018, Defendant arrived at the VA and asked to speak with his current wife, V.J. She had told her supervisor that her marriage with Defendant was dissolving and that there were some ongoing domestic issues between Defendant and V.J. V.J.'s supervisor told Defendant that V.J. was unavailable. Defendant went to his vehicle and returned to tell V.J.'s supervisor that he needed to give V.J. some paperwork. Defendant was likely attempting to give V.J. paperwork to initiate their divorce.[2] V.J.'s supervisor told Defendant that she could not assist him, and he left the facility.

V.J.'s supervisor called Federal Protective Service Inspector Anil Pillai because V.J. reported that Defendant carried weapons at all times. Inspector Pillai spoke with V.J. and her supervisor. V.J. sent Inspector Pillai an email outlining some of the troublesome contacts between Defendant and herself. This investigation was referred to Office of Personnel Responsibility Senior Special Agent Peggy Moskaluk, who discovered a discrepancy in Defendant's application and background check information. This discrepancy resulted in the present charges against Defendant. During conversations with the Senior Special Agent, V.J. mentioned that Defendant told her he had degrees and she saw some degrees or educational certificates on Defendant's wall. The Government alleges

---

[1] The current employment status may have changed, but it is irrelevant to the analysis.
[2] V.J. told Defendant he could serve her at work on September 6, 2018. However, as the Court will detail later, between September and November the couple's relationship deteriorated even further, where Defendant should not have approached V.J.'s workplace or V.J.

that the degrees are false, and this potential testimony would be relevant to Defendant's intent or willfulness.

*V.J. and Defendant's Relationship*

V.J. and Defendant began dating in 2015. Their relationship did not last long without police contact. On October 30, 2016, Marana Police Department responded to a domestic disturbance between Defendant and V.J. The officer stayed until Defendant packed a bag and left the home. While responding to a separate issue, officers observed that Defendant had returned to the home approximately twenty minutes later. Defendant and V.J. got married in February 2018. However, the relationship deteriorated quickly. V.J. claimed to Inspector Pillai that on August 31, 2018, Defendant kicked her out of their home. Before she could leave the house, Defendant was physical with her, tossing and pushing her. On September 2, 2018, she returned to the home so she and her son from a previous relationship could gather their belongings. Again, there was an altercation, which resulted in V.J. and her son running out of the house and to a neighbor's house. V.J. called Pima County Sheriff's Department.[3] An officer, who was familiar with the couple from previous incidents through the weekend, stayed while V.J. and her son packed their belongings. On September 6, 2018, V.J. learned she was not the only woman in Defendant's life and informed him that he could serve her divorce papers at work and that she would gather her belongings the following day.

The two seemed to attempt to repair their relationship through therapy. This seemed to only escalate Defendant's controlling behaviors. On October 22, 2018, Defendant told V.J. that he understood why people kill their spouses and then themselves. On October 29, 2018, Defendant and V.J. got into a verbal disagreement regarding V.J.'s need for medical treatment. On October 30, 2018, Defendant appeared at V.J.'s apartment and refused to leave. Defendant contacted V.J. several more times after this incident, including emails.

On November 1, 2018, V.J. swore out an Order of Protection against Defendant.

---

[3] Defendant's attorney states that Defendant ordinarily contacted the police "to make sure the peace was kept" but the records before the Court involving V.J. and Defendant name V.J. as the "reportee".

V.J. swears that Defendant always carries a gun, that the gun is concealed, and in various locations. V.J. did not serve the Order of Protection. She requested that officers serve it on November 9, 2018, but officers were unable to contact Defendant. She repeated many of the allegations she emailed to Inspector Pillai in the Order of Protection.

*Safety Concerns Apart from V.J.*

In 2010, Defendant was convicted of domestic violence assault and domestic violence disorderly conduct. Defendant's then-wife, L.J. believed Defendant was cheating on her and confronted him at a home of the suspected other woman. L.J. left and went home. Defendant followed her. She told her mother that she believed Defendant had a firearm. L.J.'s mother called police, who responded to L.J.'s home. The record does not indicate if police observed a firearm. The following week Defendant went to L.J.'s home and the couple argued. Defendant pushed L.J. into a stucco wall or pillar resulting in a large contusion on her face, which was swollen and bleeding. Defendant claimed at trial and on appeal that his actions were defensive in nature because L.J. had a knife. No knife was found on the scene. The conviction was affirmed on appeal to the Superior Court in and for the County of Cochise. This conviction was set aside in August 2017.

In conversations between Senior Special Agent Moskaluk and Defendant's coworkers, a coworker stated that Defendant said he carried weapons while on warrants as far back as 2016, prior to his domestic violence convictions being set aside. Other coworkers reported rumors that Defendant carried weapons on the job. Defendant was a computer forensic analyst, which is not permitted to carry a weapon. Defendant would "disappear" at work, failing to appear to collect forensic evidence, and would not respond to phone calls. This resulted in Defendant no longer assisting in search warrants. Defendant denied ever carrying a weapon at work. However, other coworkers were so distressed that one felt the need to have a ballistic vest available near Defendant.

**ANALYSIS**

Upon consideration of the briefs, attachments, transcripts, and relevant authority, the Court finds that Magistrate Judge Ferraro was correct in finding that V.J. is a prospective witness and that there is a serious risk that Defendant will threaten, injure, or intimidate her. The Court acknowledges that V.J. is not unquestionably going to be a witness or that she would be a particularly illuminating witness; however, she is a prospective witness in this matter. The Government has proven by clear and convincing evidence that Defendant presents a danger to the community and to V.J. Defendant has a history of domestic issues with V.J. and his first wife. The record before the Court shows that Defendant fails to respect and follow boundaries and obligations. Magistrate Judge Ferraro characterized Defendant as volatile, and the Court agrees with that characterization. Further, based on the failure to appear at work, the numerous police contacts, and the numerous domestic issues, the Court finds that there are no conditions that would reasonably assure the safety of V.J. or the community. Therefore, the Court affirms Magistrate Judge Ferraro's detention order.

IT IS ORDERED that the Government's motions for detention (Docs. 12, 29, 41) are granted.

IT IS FURTHER ORDERED that Defendant's motions for release (Docs. 13, 42) are denied.

IT IS FURTHER ORDERED that Defendant's motion for review (Doc. 21) is denied. Magistrate Judge Ferraro did not err by ordering the Defendant detained.

IT IS FURTHER ORDERED that this matter is referred back to Magistrate Judge Eric J. Markovich for pretrial proceedings in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59.

Dated this 25th day of January, 2019.

Honorable James A. Soto
United States District Judge